and I think the issues are rather straightforward. I think that the standard review here is for district court's determination, a reasonable suspicion, is a de novo one here. And we have basically two California Highway Patrolmen that stopped Mr. Apeland outside of Sacramento. And after a motion to suppress is filed, based upon an unlawful stopping of the vehicle and a prolonged detention thereafter, we get the declaration from the government of California Highway Patrol Officer Worley. And lo and behold, we go to the hearing, a suppression And his supervisor, Haldasel, ceased to testify over defense objection. We wanted, basically, we wanted Officer Worley. He's the one that made the stop. Well, there was and wasn't an objection. I mean, you did say several times, I want to cross-examine him. But then at one point you said, but why don't we just submit it on the papers? Well, as opposed to having hearing Haldasel for the – Officer Haldasel for the first time, Your Honor, based on experience, I had no idea what he was going to say. I see. So you mean as opposed – you thought the judge had already ruled at that point that he was going forward with the hearing. And – or he was not going to delay the hearing and have it another time. Well, at one point he said he had a lot of important things to do in the chambers and he's going to – if you want to continue this hearing, that's fine with me. And then the government counsel said, well, you know, I could have called Officer Haldasel anyway on top of – in addition to Officer Worley, and that's, of course, correct. However, because Worley was not – Officer Worley was not present, and the Court was – I didn't know whether the Court at that time was going to consider his declaration or not. Was the declaration on an affidavit form? That's correct. Yes, it was. Well, tell me this. In a suppression hearing, a pretrial hearing, you don't have to have live testimony. What's wrong with an affidavit? Well, it's – Answer that question. Can you have an affidavit in a suppression hearing? In the opinion of the Court, with the conflict of the testimony of the – between my client, defendant Mr. Applin's declaration as to what happened at the stop and Officer Worley's declaration as to what happened after the stop, Judge Burrell decided that an evidentiary hearing was necessary for his – I know he decided that, and he did give you an evidentiary hearing, and you did hear that one officer, and the question is, could he consider in a suppression hearing the declaration of Officer Worley? Yes or no? Not without Officer Worley being subjected to cross-examination by defense counsel. In other words, you're saying that in a pre-suppression hearing, you have to have oral testimony if there's some conflict between the defendant and the officers? I don't think you've got a case that will show that. I mean, Lawford versus Washington. Yeah, but that was in a trial. This would be different. If you had gone to trial, and they wanted to put in Officer Worley's affidavit, you would have a confrontation objection, no question about it. But that's – you didn't go to trial. And I think the cases that we've seen would indicate that the most recent confrontation clause doesn't apply to a pre-suppression hearing, to a suppression hearing. If I'm wrong on that, I'd really like to know the cases. What would be the rationale for extending the trial right to confrontation to suppression hearings? It seems to me that trial had to do with determination of guilt, while the suppression hearings had to do with the admission of evidence. So why would the – what would be the rationale for extending the right to confrontation to suppression hearings? Well, Judge, I say just basic due process and right to a fair hearing. And under the local rules of court, when you submit a declaration, that declarant has to be available for cross-examination should the court decide to hold an evidentiary hearing. The court had no duty to hold an evidentiary hearing. But once it decided to have one, based upon the contradictory input it was getting from the defendant and from the government witness, also you're going to have to hold an evidentiary hearing. But what exactly is the contradiction, or put another way, it seems to me, this is what I think it is. The officer who did testify and the defendant both said that the – that first there was a sobriety, physical sobriety question, then he asked some questions. And I guess Worley is being read as having said the opposite, although I'm not sure he did say the opposite. Is that the main issue? What else – what other issue is there about what Worley said that the other guy didn't say that would have made any difference? In other words, insofar as the officer who did testify said the same thing, there's no problem. It's only insofar as they were different, right? Well, after the HGN test, Officer Worley determined that my client was not driving under the influence. That was the whole grounds for the stop. Right. So in my estimation, that's when the detention should have ended. Right. So that's the contradiction you're talking about. Well, Worley said that the whole – all this, where are you going and where are you coming from, and why don't you know your parents' exit from the freeway, and where are you going in Los Angeles, and all this – all these questions in – were after. He had determined my client – Worley said they were after, or the other guy said they were after. Well, Officer Worley said, reading his testimony, they were after. And that would extend the detention. That would have given the district court judge more feeling. You don't mean Worley. I'm sorry. Because Worley – Worley's the one who didn't testify, right? No, Worley did not testify, Your Honor. Right. Out-of-shelf testifier. But you want him to rely on Worley, so what's the problem? Now I'm really confused. You're saying Worley said what you believe happened. In his declaration. Right. And as it turns out, after the hearing, and I get the – then I get the opinion from Judge Burrell, and he's relying upon what Officer – Highway Patrol Officer Worley said in his declaration, even though he wasn't subjected to cross-examination, and he – and he also relies on portions that Officer Havaschel, who didn't give a declaration but testified at the suppression hearing. But Havaschel, as I recall, said what you just said. He said that the questioning happened afterwards. He got it correct. He said it correctly. He said that the questioning took place before. No, he didn't. He said the opposite. He said after. And it was Worley – this is my understanding. I guess I have a very different view as a record. Havaschel said the questioning occurred afterwards as your client did. Worley said something ambiguous. He said the two things happened with an and. He doesn't really give the order. I'm just wondering whether it's not just clear error and why we're worrying about the introduction of Worley's testimony, because Worley didn't clearly say this. He said – he said – let's see if I can find it. He said, I asked the pre-failed sobriety questions and conducted a horizontal gaze failed sobriety test. You might surmise it was in that order, but he didn't say that. Yeah. I think you have to – he doesn't say it exactly. And then the other two people who testified said otherwise. There was only one other witness. The only witness that testified was – Well, but your client's declaration said otherwise, and the other officers said otherwise. Yes. The grounds for the stop, if you eliminate Worley's declaration, I think you have an illegal stop of the vehicle, because you have Officer Haudeschelle basically saying, and my client went over the line a little bit from the number one lane into the center divider, over the lane line one or two feet once, and he came back, and he went over the right line into the number two lane one time. He doesn't say over what period of time this was, over what distance this was. And basically, going over, crossing over the left line and crossing over the right line and getting – and correcting back into your own lane, that's not a violation of the vehicle code. That's not grounds for believing a driver is driving under the influence of the vehicle. So now you're pushing here, so now you're not talking about the order of the questioning. You're saying the stop – that the reason the difference matters was the stop wouldn't have been good. Well, it goes to the initial stop. If you eliminate Worley's declaration, I don't think there's grounds for the stop. But you're – you may be right. Now, your client testified by declaration. Isn't that right? Well, it was – yes or no. I mean – yes. All right. So now – now you're saying it's okay for my client to testify by declaration, but since his statement contradicts Worley's in a way, we've got to exclude Worley's statement unless you have a chance to cross-examine him. I don't follow that. My client was there, subject to being cross-examined by the assistant U.S. attorney, Ms. Garab. Yeah, but that – sure, he was subject to being cross-examined. But he – you didn't put on oral testimony. You put on a declaration. Yes. I had nothing further to bring out. And if she wanted to cross-examine him, as I did the government's witness, I – she had that right. He was there. She could have called him. No ifs, no buts, no ands. I did not have that opportunity. Okay. Thank you very much for your argument. I'd like to suggest one thing, though, to you. I raise the question that we can use Worley's testimony, Worley's declaration in light of – despite Crawford. If you have any cases to the contrary, I'd like you to submit a 28-J letter. I'd like to see them. Thank you very much, Your Honor. May it please the Court. Mary Graf for the United States. Your Honor, I agree with you, Judge Brey. I think that Rule 104 of the Federal Rules of Evidence says that on preliminary questions of the admissibility of evidence, the Federal Rules – the Rules of Evidence don't apply this – Well, that may be. But what we have here is, as I see it, a contradiction. Well, either – we do have – what was the name of the officer who did testify? Havisham, Your Honor. Havisham? Okay. He testified all those questions and answers were after it was determined that he was not driving under the influence, correct, sir? That's correct. So he testified that the questions were afterwards, all right? That's correct. As to Worley's declaration, you can either understand it as not addressing that question or as saying the opposite. At that point, you have a trier of fact who, in this instance, seemed to first draw an inference from what Worley said that is not directly there and essentially made a credibility determination as between two government witnesses favoring the one who wasn't there over the one who was there. Now, why isn't that either clear error or a due process violation without getting into a confrontation clause? Because I don't think it matters in this instance whether he was determined to be not under the influence. But I want to know – let's take the – we'll get to that. But as a factual finding as to what happened, how can the district court credit a vague inference from somebody who isn't there? If he were there, you could have said to him, do you mean to say that the order was X? And then he would have made a clear statement about it. But what he has is vague. An inference was drawn. And then a credibility determination was made as opposed to another government witness as to what happened. And I don't understand, leaving the confrontation clause out of this, why that isn't either a clear error or a due process violation. I'm taking a moment. If I can have a moment to take a look at the judge's opinion. Your Honor, I think he just didn't see that. He saw somewhat of conflict in the testimony. I think that he went to the next step, that it really didn't matter, that whether this questioning occurred – the officers had observed other behavior, had observed the strong smell of air freshener. There were other things that were into the equation by the time the field sobriety tester or they had determined that he was not under the influence. Well, once they determined he was not under the influence, then they detained him so that they could have the dog smell, right? Well, they detained him to ask an additional question about his route of travel. They'd smelled the air freshener. They'd noticed his extreme nervousness. They then detained him. Those are all, you know, those are all in the eyes of the beholder, if you'll pardon the expression. And they really don't add up too much. And what concerns me is that they stopped him for possible intoxication, and then they used that stop when he wasn't intoxicated to hold him there so that they could get the dog over there. Well, actually, the dog was in the car. I know the dog was in the car. Your Honor, I think it's the amount of detention. It's what they knew. But when they approached that vehicle, they smelled the air freshener. He came around. He was extremely nervous. The officer said that the air freshener, strong odor of air freshener, he knew by his training and experience, often masked the odor of narcotics. So, you know, it's not a lot, Your Honor, but you don't need a lot for reasonable suspicion. You really just need some particularized fact. They had that particularized fact, and then where they go with that, they use it to ask additional questions. So what happens here is that they have a reasonable suspicion, and the law says they're supposed to quickly try to dispel or affirm that suspicion. I think the officer did that. He asked a series of questions about the route of travel. So you're now relying on the questions, and the judge also relied on the questions. So the fact so you tried earlier to say it was harmless error, but I don't see how that could be. He I think he relies on the questions for the dog sniff. Yes, I think that's right. So then it does matter whether the questions were first or second. No, I don't think it matters, because I think what happened what what happened when they stopped the car is they already had reasonable suspicion about the air freshener, so that they were looking for narcotics. It does matter, or it doesn't matter. Either the air fresheners alone were enough, or they weren't. The questions mattered, or they didn't matter. Your Honor, I think it's a sliding scale. I think they smelled the air freshener. All right. Before they before they administer the sobriety test. So already when they get in out of the car and they bring them around, they've got some suspicions based on the air freshener smell. So they're then administering. They administer that the physical sobriety test, and then they ask questions after the physical sobriety test. I don't think it matters whether before or after. I think they had enough to ask those questions because of the air freshener smell. There was reasonable suspicion. There was a particularized articulated fact by the officers as to why they were pursuing. Judge actually found was in the mind of Officer Worley, who wasn't there, Aplin's test responses to the questions and his behavior during the traffic stop, combined with a strong odor of air fresheners, added up to reasonable suspicion that Aplin was engaging in drug trafficking. All right. And that is the basis for him continuing the investigation. I mean, it's the basis for him to go get the dog. But the questioning itself, the air freshener is the basis for the questioning. So I don't think it matters whether the officer determined when he starts to ask those questions, whether or not Aplin is intoxicated or not. He's already smelled the air freshener before he ever gives the physical sobriety test. So it's I guess it's a continuum here, if you will, Your Honor. You have reasonable suspicion and you're trying to quickly dispel it. This this questioning occurred over two or three minutes. So he asked the question, where are you traveling? Where are you coming from? Where are you going? And at that point, Aplin gives evasive answers, says he doesn't know, says he doesn't know where his parents live. Say he says he doesn't know where he's going in Los Angeles. At that point, then only then does the officer then say, are there drugs or guns or some contraband in the vehicle? And then Aplin acts nervous, swallows hard, and says no. At that point, then the officer felt justified in an additional detention to go get the dog out of the car and have the dog, you know, circle the truck. And then when the dog hit, there was probable cause to search the vehicle. So I think it's a continuum. When he smelled the air fresheners, and let's assume that the questioning occurred after the the sobriety test. So he already knew he wasn't under the influence. When he asked the questions, he had to have reasonable suspicion of something. Why? He had reasonable suspicion of narcotics trafficking based on the strong smell of the air fresheners. Okay. So if he had that reasonable suspicion, then the answers to the questions essentially didn't matter. As to the reasonable suspicion. Well, it was it was it was slight. It was one objective fact, so that he then, before going to get the dog immediately, he then asked, took another minute to ask some additional questions. Where are you coming from? Where are you going to? And then when those questions, they didn't serve to dispel his. Your sort of suggestion that he needed a high, a lower reasonable suspicion to keep him there for a while to ask the questions, then he needed to keep him there longer to get the dog. I think it's a continuum. I think what the law says is that is that you're supposed to when you have reasonable suspicion, the officer is supposed to act expeditiously to either dispel or affirm that suspicion. And I think that's exactly what the officer did here. He had some suspicion based on the air freshener. He asked a question. The questions, the answers were evasive. And what if the answers had not been evasive? Would he still have had? I think it's a tougher case then. Then you'd have to decide is based on the air freshener alone, whether that would have given him reasonable suspicion to get the dog. I'm saying the answer is here confirmed. Exactly. Exactly. He didn't go to the cases that would say the air freshener alone would be sufficient. You know, Your Honor, I think it's, I don't have a case to cite to you, but I think that, again, it's. I have a case. It was in the Eighth Circuit and I just sent it. Your Honor, that would be out of circuit authority. You know, Your Honor, again, I think that that it's a continuum depending on the amount of detention and what's going on there. Could he have sat there for an hour and questioned him based on the air freshener? I don't think so. But could he ask him a couple of minutes of questions, additional questions?  Let's circle back for a minute. I know you're out of time, but where we started this, suppose we disagreed with your larger scenario and we thought it really did matter in what order these questions were asked. Then what? Given the fact that Worley was not there, didn't distinctly say anything about the order, the officer who was there, and the judge, by the way, recognizes this, said the opposite. And the declaration from the defendant says the opposite. What do we do with that? I think then you have to decide whether or not the air freshener allows the additional questions. So you would agree that we would wash out that information? I think that's right, Your Honor. I think you decide that the air freshener alone allows one more question, and then when that question is answered evasively. In other words, we would find clearly erroneous the judge's ruling that the order that the questions were asked in the opposite order. I think that's right. Thank you very much for your arguments. I'm sorry. I will give you a minute in response. Go ahead. I just wanted to correct. It was Officer Worley who said the questions were asked before Mr. Applin passed the field sobriety test. But where did he say that? He said and. In the court's ruling, the. He said it. The court ruled it, but he didn't say it. Oh, I see what you're saying. And it was Haldisell who said that the questions were asked. Right. That's right. Okay. Thank you very much. Thank you, counsel. The case of United States v. Applin or Aplin is submitted. We will go on to Stilwell v. Smith and Nepley. We'll go one more.
judges: Bright , D.W. Nelson, Berzon